UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CAMILLA J. CALLOWAY,

      Plaintiff,

                                   Case No. 10-10373

v.                                    HON. AVERN COHN

SHAUN DONOVAN, SECRETARY,
DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT,

      Defendant.
_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 16)
## AND
## DISMISSING CASE

I. Introduction

This is an employment discrimination case under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, et seq. and the Age in Employment Discrimination Act ("ADEA").  Plaintiff Camilla Calloway (Calloway)[1] is suing defendant Shaun Donovan, Secretary of the Department of Housing and Urban Development ("Secretary"), claiming that she was subjected to race, gender and age discrimination in January 2007, when she was not selected for a GS-13 Senior Project Manager position in the Detroit office.

Before the Court is the Secretary's motion for summary judgment.  For the

_____

[1]Calloway is proceeding pro se and without payment of the filing fee.

1

reasons that follow, the motion is GRANTED.  This case is DISMISSED.

## II.  Background

### A.  Calloway's Employment Generally

Calloway is employed by the United States Department of Housing and Urban Development ("HUD"), as a GS-12 Project Manager in the Detroit office.  Calloway is an African American female born in 1951.  Calloway has been a HUD employee for approximately 27 years.

Patricia Russie (Russie), was the Director of Asset Management in the Detroit office.  Russie was Calloway's second-level supervisor and the selecting official for the Senior Project Manager position.  She is a Caucasian female born in 1954.

Silas Polk (Polk) worked in the Detroit office as the GS-13 Supervisory Project Manager in charge of Team A.  Polk was Calloway's immediate supervisor and a member of the selection panel for the Senior Project Manager position.  He is deceased.  He was an African American male born in 1944.

Laurie Coplin (Coplin) currently works in the Detroit office as the GS-13 Supervisory Project Manager in charge of Team B.  Coplin was a member of the selection panel for the Senior Project Manager position.  She is a Caucasian female born in 1954.

At the time of the selection, Russie also supervised Polk and Coplin.

### B.  The Job at Issue

On October 24, 2006, HUD posted Job Announcement Number 09-MSA-2007-0002z, advertising a GS-13 Senior Project Management position in the Detroit office.

2

Calloway applied and was deemed qualified for the position.

On December 7, 2006, a Selection Roster was referred to the selecting official by HUD's Human Resources Division in San Francisco, California.  The roster contained the names of the eight best qualified candidates: Camilla Calloway, Danberry Carmon, Edward Chlystek, Mark Dominick, Mary Mercer, Michael Torreyson, Linda Ross and Pamela Wildfong.  Two of the candidates, Linda Ross and Pamela Wildfong, withdrew their applications.  The remaining six candidates were interviewed for the Senior Project Manager position by a three-member panel consisting of Coplin, Polk and Russie.

Each candidate was asked seven job related questions.  The panel made notes on the candidate's interview sheet.  At the conclusions of the interviews, Russie recommended Mark Dominick (Dominick) for the position.[2]  The recommendation was sent to HUD officials in Washington D.C. for approval.  Russie signed the Selection Roster as the designee who conducts selection interviews.

Craig Clemmensen, Deputy Assistant Secretary for Operations, was the Selection Official.  He supported Dominick for the position, as recommended to him by the panel.

Dominick was promoted to the Senior Project Manager position effective January 21, 2007.  Dominick is Caucasian and was approximately 26 or 27 at the time of his selection.  Dominick was a GS-12 Project Manager and had been a HUD employee for two years at the time of his selection.  Prior to joining HUD, he worked for the Michigan

---

[2]Dominick was apparently the panel's second choice for the position.  The first choice was Michael Torreyson (Torreyson), a candidate from West Virginia.  Torreyson, however, advised the panel at the interview that he was unable to relocate to Michigan.  Therefore, he was not offered the position.

Multi-Family Asset Managers, as the Manager of Adjustments and Renewals/Financial Analyst.

### C.  Calloway's Job Performance

Although Calloway does a thorough job on her work assignments, she acknowledges that at times she gets behind in her work and is late completing assignments.  Calloway does not contend that she is a fast worker.  She does not "try [to] do work as quickly as others."

Calloway was aware that her supervisor, Polk, kept an excel spreadsheet or tracking charts to manage the flow of work assignments.  Polk, as Calloway and Dominick's immediate supervisor, kept spreadsheets of their assignments.[3]

In May 2005, Calloway and Dominick received workload plans from Supervisor Polk.  The Plans set forth specific time frames for completing projects.  Between January 5, 2005 through December 21, 2005, Calloway worked on 54 projects, 19 of the work assignments were untimely.  Between February 3, 2005 and January 26, 2006, Dominick worked on a total of 313 projects, 2 of the work assignments were untimely.

Between December 29, 2005 through March 8, 2007, Calloway worked on 135 projects, 58 of which were untimely.  Between January 31, 2006 through February 2, 2007, Dominick worked on a total of 477 projects, of which 6 were not timely.

### D.  Procedural History

On March 11, 2007, Calloway filed an administrative EEO complaint alleging that she had been discriminated against on the basis of her race and age discrimination

---

[3]As will be explained, infra, Calloway disputes the accuracy of the spreadsheets.

4

when she was not selected for the senior project manager position.  She did not include

any allegations of gender discrimination in her administrative complaint.

HUD completed its investigation of the complaint and on February 18 and 19,

2009, a hearing was held before an administrative judge of the Equal Employment

Opportunity Commission.

On March 27, 2009, the administrative judge issued a decision and order finding

no discrimination.  On May 12, 2009, HUD adopted the administrative judge's decision

of as its Final Order.  Calloway filed an appeal with the EEOC's Office of Federal

Operations.  In a decision dated October 20, 2009, the EEOC affirmed the fining of no

race or age discrimination.

On January 27, 2010, Calloway filed the instant complaint, claiming race, age,

and gender discrimination.

### III.  Summary Judgment

Summary judgment will be granted when the moving party demonstrates that

there is "no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  There is no genuine issue of

material fact when "the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving

party's response "must set forth specific facts showing that there is a genuine issue for

trial."  Fed. R. Civ. P. 56(e).  Showing that there is some metaphysical doubt as to the

material facts is not enough; "the mere existence of a scintilla of evidence" in support of
the nonmoving party is not sufficient to show a genuine issue of material fact. <u>Anderson
v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must
present "significant probative evidence" in support of its opposition to the motion for
summary judgment in order to defeat the motion. <u>Moore v. Philip Morris Co.</u>, 8 F.3d
335, 340 (6th Cir. 1993); <u>see</u> <u>Anderson</u>, 477 U.S. at 249–50.

IV.  Title VII and ADEA

Title VII prohibits discrimination in employment on the basis of race and gender,
42 U.S.C. §2000e-2, and the ADEA prohibits age discrimination in employment against
persons over 40, 29 U.S.C. §623(a)(1).  A plaintiff may establish a Title VII or ADEA
claim of discrimination by producing either direct or circumstantial evidence. <u>Rowan v.
Lockheed Martin Energy Systems, Inc.</u>, 360 F.3d 544 (6th Cir. 2004).  Calloway has not
offered any direct evidence of race, gender or age discrimination.  Rather, she relies
upon circumstantial evidence to support her claims.

Federal courts apply a three-step legal analysis to Title VII cases involving
circumstantial evidence. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). The
Sixth Circuit applies the same analysis to age discrimination claims brought under the
ADEA. <u>Grosjean v. First Energy Corporation</u>, 349 F.3d 332, 335 (6th Cir. 2003).  Under
the <u>McDonnell Douglas</u> framework, the plaintiff has the initial burden of establishing a
prima facie case of discrimination.  If the plaintiff successfully establishes a prima facie
case, the burden of production shifts to the defendant to articulate a legitimate
nondiscriminatory reason for its action.  Once the defendant states a legitimate,

6

nondiscriminatory reason, the plaintiff must prove that defendant's reason is not its true reason, but is instead a mere pretext for intentional discrimination.  Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078 (6th Cir. 1994).  In ADEA cases, the plaintiff must prove that "age was the 'but for' cause of the employer's adverse decision."  Gross v. FBL Financial Services, Inc., __U.S.__, 129 S.Ct. 2343, 2351 (2009).

IV.  Analysis

A.  Prima Facie Case

"In order to establish a prima facie case of discrimination based upon a failure to promote, the plaintiff must demonstrate that: (1) [she] is a member of a protected class; (2) [she] applied for and was qualified for a promotion; (3) [she] was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received the promotion."  White v. Columbus Metropolitan Housing Authority, 429 F.3d 232, 241-244 (6th Cir. 2005), quoting Nguyen v. City of Cleveland, 229 F.3d 559, 562-63 (6th Cir. 2000).  The Secretary acknowledges that Calloway can establish a prima facie case of race, gender and age discrimination.[4] The Court accordingly finds that Calloway has made out a prima facie

---

[4]Although Calloway never alleged gender discrimination in her administrative EEO complaint or at anytime during the EEO investigation, the Secretary has not argued for dismissal of the gender discrimination claim for failure to exhaust.  Instead, while pointing out this flaw, the Secretary has addressed Calloway's gender discrimination claim together with her other claims.  Although the Sixth Circuit held that the requirement that a claim be included in administrative proceedings is jurisdictional in Ang v. The Procter & Gamble Co., 932 F.2d 540, 545 (6h Cir.1991), that holding has been abrogated by more recent cases.  See Hill v. Nicholson, 383 F. App'x. 503 (6th Cir. 2010) (holding that requirement is not jurisdictional in Title VII context); Allen v. Highlands Hosp. Corp., 545 F.3d 387, 401-02 (6th Cir.2008).  In any event, in light of the Secretary's position, the

case.

## B.  Legitimate Non-Discriminatory Reason

### 1.

As noted above, once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action.  The employer only has to produce admissible evidence showing "that the plaintiff was rejected, or someone else was preferred, for a legitimate nondiscriminatory reason."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142-143 (2000) (Defendant's "burden is one of production only, not of persuasion.").

### 2.

Here, the Secretary has proffered testimony from the individuals who participated in the selection process. In addition, the Secretary has produced the business records related to the Senior Project Manager selection and Calloway's ability to process work assignments in a timely manner.

Russie gave the following explanation at the administrative hearing for not recommending Calloway for the Senior Project Manager position:

> [Calloway] is not timely with her work. While her work is accurate and she produces a good work product, I did not feel she could meet any unusual demands which would be required of a Senior Project Manager. You have to react quickly in this position and I did not feel she possessed those qualities. Around November or December 2006 out of 20 Project Mangers [Calloway] had

---

Court assumes, without deciding, that Calloway's gender discrimination claim is properly before it.

the highest number of overdue work items.  She is often late to meetings and training.  She is not always well prepared for meeting with clients, lacking proper documents to support what we are talking about.

Russie further testified as follows:

I was looking for someone who displayed initiative, had a positive demeanor, was willing to take on extra work, someone who comes forward and offers solutions that can be shared with other employees, and someone who is a team player.  A Senior Project Manager deals with troubled property, but they also have to deal with political issues and pull together work for Secretaries coming into town.  I was looking for someone who could think on their feet and take on more work.  I was not looking for any type of experience, education, or training because I assumed this was taken into account when the applicants were placed on the best qualified list.

Polk testified that Calloway met most of the criteria for the position but had a "real problem" with respect to processing items in a timely fashion.  Like Russie, Polk eliminated Calloway from further consideration mainly because of the timeliness and workload issues.  Polk explained that the Senior Project Manager has dealings with headquarters on a lot of cases.  As a result, the person is expected to process work assignments as fast as possible.

As noted above, Polk also produced business records–his spreadsheets– showing that from January 5, 2005 through December 21, 2005, Calloway worked on 54 projects, 19 of the work assignments were untimely.  Between December 29, 2005 through March 8, 2007, Calloway worked on 135 projects, 58 of which were not processed in a timely manner.  In comparison, the selectee, Dominick was able to work much faster than Calloway.  Polk's business records showed that between February 2, 2005 and January 26, 2006, Dominick worked on a total of 313 projects, 2 of the work assignments were untimely.  From January 31, 2006 through February 2007, Dominick

worked on a total of 477 projects, 6 of which were untimely.

Polk felt that the Senior Project Manager needed to work "faster than the standards." Although Calloway and Dominick were usually both very accurate with their work, Polk thought Dominick worked at a much faster pace than Calloway, and would be better able to handle the tasks assigned to the Senior Program Manager position. While Calloway had worked for HUD longer than Dominick, this fact alone did not make her the superior candidate for the position.

Coplin testified that she did not recommend or support Calloway for the Senior Project Manager position because "I don't believe [Calloway] demonstrated the initiative needed to be a Senior Project Manager." Coplin's opinion was based upon Calloway's responses to the interview questions and her knowledge about Calloway's ability to provide technical advice. Coplin felt that Calloway had a lot of desirable qualities however, in her opinion, Calloway "was not always able to provide timely advice, solutions or work product. This [according to Coplin] would impact [Calloway's] ability to be flexible regarding unexpected or changing demands." Coplin also indicated that the timeliness issue was the primary reason that caused her not to recommend Calloway to headquarters. Based upon what the other panel members had said about Calloway's past performance, Coplin did not think she could do the job.

3.

Based on the record, the Secretary has met its burden on articulating a legitimate non-discriminatory reason for not selecting Calloway for the promotion–her inability to timely complete assignments. Importantly, the Secretary is not required to prove that

10

the person promoted to the Senior Project Manager position (Dominick) was more qualified than Calloway.  Rather, the Secretary only has to articulate legitimate nondiscriminatory reasons for its decision.  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 258 (1981).  Here, eight HUD employees were rated best qualified by the Human Resources Division.  In Burdine, the Supreme Court stated:

> [a]n employer has the discretion to choose among equally qualified candidates provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although it may be probative of whether the employer's reasons are pretexts for discrimination.

450 U.S. at 257.  An employer also has the discretion to choose among candidates with different but equally desirable qualifications.  Canham v. Oberlin, 666 F.2d 1057, 1061 (6th Cir. 1981).  "Title VII does not diminish lawful traditional management prerogatives in choosing among qualified candidates. . . . An employer has even greater flexibility in choosing a management level employee, as is the case here, because of the nature of such a position."  Wrenn v. Gould, 808 F.2d 493, 503 (6th Cir. 1987) (citations omitted).  Thus, the Secretary has met his burden of production by articulating a legitimate nondiscriminatory reason for not selecting Calloway for the position.

C.  Pretext

1.

Once the employer articulates legitimate nondiscriminatory reasons, the burden is on the plaintiff to prove by a preponderance of evidence, that the reasons offered by the employer for its adverse action is not its true reason, but a pretext for intentional discrimination.  Burdine, 450 U.S. at 253.  Calloway must prove by a preponderance of

the evidence that the reason that the Secretary failed to promote her was intentional race, gender and age discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). Calloway bears the ultimate burden of persuasion at all times.

In order to prove pretext, she is obligated to show by a preponderance of the evidence, that the employer's reasons "(1) had no basis in fact, (2) did not actually motivate its conduct, or (3) were insufficient to warrant the challenged conduct." Browning v. Department of the Army, 436 F.3d 692, 695 (6th Cir. 2006). Regardless of which articulation of the governing test is used, Calloway has the ultimate burden of producing sufficient evidence from which a jury could reasonably reject the Secretary's articulated reasons and infer that the Secretary intentionally discriminated against her because of her age, race, and/or gender. Browning, 436 F.3d at 696.

2.

Calloway has not met her burden. Calloway disagrees with the accuracy of Polk's spreadsheets, and furnishes her own handwritten sheets which she says show her work was more timely than Polk's sheets show. However, putting aside whether the sheets are admissible evidence, they fail to create a genuine issue of material fact as to pretext in light of the record as a whole. Calloway's subjective view of her qualifications without more, fails to establish pretext. Hendrick v. Western Reserve Care System, 355 F.3d 444, 462 (6th Cir. 2004); Shoonmaker v. Spartan Graphic Leasing, 595 F.3d 261 (6th Cir. 2010). Moreover, as the administrative law judge noted, even if Polk's spreadsheets had errors in them, in order for the errors to be relevant, those errors would have to be in some way based on age or race. There is no evidence that was the

12

case.  Also, the disparity between the number of untimely projects from Calloway and from Dominick is significant.  The administrative law judge put it this way:  "the disparity . . . is too great to ignore . . . . Calloway was late on more than forty percent of her projects in 2005 and 2006.  Dominick was late on only one percent of his projects for the same time period."

The evidence does support Calloway's view that she is a good and thorough worker.  Indeed, she was put on a list of "best qualified candidates" considered for the Senior Project Manager position.  Her work record, some of which is attached to Calloway's response, shows she has been given high marks for her performance.  The Secretary has not contended, nor is there evidence, that Calloway is not qualified for her position, which she has performed very well.  However, by her own admission, she is not a fast worker, a fact of which her supervisors were also well aware.  While timeliness may not impact her current job as Project Manager, it would impact the position she was seeking.  The managers were looking for someone as a Senior Project Manager who could keep up with a high volume of work, not just a good worker. Calloway, in their view, was not the best candidate for the promotion because she had difficulty completing tasks in a timely fashion.  This fact is borne out in the record, consisting not only of Polk's spreadsheets, but also the testimony from her supervisors. In short, the evidence shows that the Secretary's reason for not selecting Calloway had a basis in fact and was not a pretext for discrimination.

4.

13

Moreover, evidence of discriminatory animus is lacking. Calloway and Russie have worked together for "quite a long time." Russie trained Calloway and, according to Calloway, became "very good friends." Calloway has not come forth with admissible evidence showing that Russie has a discriminatory attitude toward African Americans, women or people in her age group.

Calloway and Polk are the same race, African American. Calloway admits that she and Polk were "cordial to one another." Although Calloway believes that Polk did not "particularly care" for her because she knew more about the job than he did, she also said that she suspects that Polk's "ego ha[d] gotten the best of him." This does not show discriminatory animus.

## V.  Conclusion

Overall, Calloway has not come forward with any evidence to create a genuine issue of material fact on the issue of whether Russie, Polk or Coplin were motivated to discriminate against her because of her race, gender or age. Therefore, the Secretary is entitled to summary judgment on all of Calloway's claims.

SO ORDERED.


Dated:  May 3, 2011                     S/Avern Cohn_____
                                        AVERN COHN
                                        UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to Camilla J. Calloway, 18965 Wildemere, Detroit, MI 48221 and the attorneys of record on this date, May 3, 2011, by electronic and/or ordinary mail.

                                        S/Julie Owens_____
                                        Case Manager, (313) 234-5160

14